23690

In the Matter of Brian DUMAS, Respondent.

(419 S.E. (2d) 791)

Supreme Court

*Attorney General T. Travis Medlock* and *Asst. Attys. Gen. James G. Bogle, Jr.* and *J. Emory Smith, Jr.,* Columbia, for *complainant.*

*Brian Dumas, pro se.*

Heard May 5, 1992; Decided July 20, 1992.

Reh. Den. Sept. 2, 1992.

*Per Curiam:*

This is a disciplinary proceeding. Complainant Attorney General of South Carolina alleges that respondent Brian Dumas has committed acts of misconduct in respect to several clients, and that he has engaged in other activities tending to bring the legal profession into disrepute.[1] The matter came before a Panel of the Board of Commissioners of Grievances and Discipline (Board) for six days of testimony. The Panel recommended that respondent be disbarred. The Executive Committee of the Board adopted the Panel's findings of fact and conclusions of law and also recommended that respondent be disbarred.

We have carefully reviewed the voluminous record, and adopt the Panel' findings of fact. The following is a brief overview of respondent's misconduct.

### DRIVING UNDER SUSPENSION

Respondent's driver's license was suspended from May 5, 1987 through May 19, 1991 for a third-offense DUI. Nevertheless, respondent drove his automobile during this period in contravention of the law. In so doing, he was seen by a number of witnesses, including an attorney who had seen respondent drive his automobile from the Richland County Judicial Center parking lot.

---

[1] The acts complained of took place during a two-year period from 1987 through early 1989. Therefore, Rule 32, Sup. Ct. Rules, Code of Professional Responsibility, applies.

## USE AND POSSESSION OF
## CONTROLLED SUBSTANCES

Respondent and another attorney used cocaine together in 1987. This fact was corroborated by another person who was present when the cocaine use took place.

## HUTTO MATTER

Tana Hutto employed respondent to represent her in a divorce proceeding. Shortly after she retained respondent, she received a speeding ticket. Ms. Hutto testified that she asked respondent to handle the ticket, and he agreed to do so. She called respondent several times after she delivered the speeding ticket to him, and he assured her that he would take care of the matter. Approximately six months later, Ms. Hutto was stopped again for speeding. She was informed by the police officer that her license had been suspended for failure to pay the first ticket. As a result, Ms. Hutto was incarcerated overnight.

## DOUCETTE MATTER

James Doucette retained respondent on January 8, 1989 to represent him in an appeal of attorneys' fees for services rendered in the trial and settlement of a multi-million dollar personal injury lawsuit. Doucette also retained respondent to establish a co-conservatorship consisting of Doucette's sister, who is custodian and the mother of the minor children receiving the personal injury award, and Citizens and Southern National Bank (C&S). In addition, respondent was to complete an inventory for the Probate Court that had approved the minor settlement. Doucette became dissatisfied with respondent's handling of his case and became suspicious that respondent was not being truthful with him. As a result, Doucette recorded several revealing telephone conversations between him and respondent.

As to the appeal of attorney's fees, respondent failed to perfect an appeal to this Court. However, rather than admitting to Doucette that he had been negligent, respondent advised Doucette to dismiss the appeal. Respondent falsely informed Doucette that the attorneys whose fees were disputed could attack Doucette as having a personal interest in the appeal as the contingent beneficiary under his sister's will. In fact, re-

spondent had no knowledge regarding Doucette's sister's will.

As to the co-conservatorship and inventory, respondent not only failed to take any action on either of these matters, but he also deceived Doucette regarding their status. For example, respondent indicated to Doucette that C&S refused to enter into a co-conservator agreement when in fact C&S was desirous of transferring the funds from a custodian account to a conservator account in order to comply with restrictions imposed by the settlement agreement.

## FLYNT/PEACHER MATTER

Bambi Jo Flynt retained respondent to represent her in a divorce action. She borrowed $1,500 from a friend, John Peacher, to apply toward respondent's fee. Respondent agreed in writing to protect the $1,500 loan of Peacher to Flynt and to repay Peacher out of the proceeds of the divorce. Respondent paid Peacher $750 after a portion of the divorce proceeds were disbursed. However, respondent did not pay Peacher the outstanding balance of $750, thus failing to comply with the letter of protection he issued Peacher.

In addition, respondent borrowed $2,000 from Mrs. Flynt. Respondent used the money to pay attorneys' fees in a matter in which he was a named party. The loan never was repaid.

## DANIELS MATTER

James Daniels employed respondent to represent him in a mortgage foreclosure sale. He forwarded respondent a total of $25,000. Of this, respondent disbursed approximately $24,355, but failed to account or refund the remaining $645.

## GILMORE MATTER

Aubrey Gilmore retained respondent in 1983 to represent various claims, including allegations of age discrimination and unfair labor practices, against an employer. Respondent filed claims with the South Carolina Human Affairs Commission and the U.S. Equal Employment Opportunity Commission, and initiated a civil suit in federal court. In 1985 Gilmore also filed claims against his employer for wrongful termination and fraud. The federal court placed Gilmore's civil suit on "statistical stay" pending resolution of these matters by the Human Affairs Commission and EEOC.

Gilmore's administrative remedies were exhausted in September 1986. Respondent failed to reactivate the civil suit in federal court, despite repeated requests from Gilmore to do so. Moreover, in June 1987 a representative of the United States District Court Clerk's office began contacting respondent to ascertain the status of the administrative review of Gilmore's claims. Respondent deliberately misled the Clerk as to Gilmore's claims for approximately three months.

## PILOT MATTER

Elizabeth Pilot retained respondent to represent her in a personal injury action. Respondent filed suit but removed it from the active roster pursuant to Rule 40(c)(3), SCRCP. Respondent instructed Ms. Pilot to contact him once she reached maximum medical improvement.

Approximately three years later, Ms. Pilot telephoned respondent. Respondent failed to return Ms. Pilot's telephone calls. When Ms. Pilot decided to retain different counsel, respondent neglected to timely deliver her file to her.

\* \* \*

The record is rife with other facts indicating that respondent shirked his responsibilities as an attorney. Respondent failed to maintain simple bookkeeping procedures, to return telephone calls, and to promptly return files and other property to his clients. Respondent also neglected to deposit client funds into an appropriate bank account.

We find that respondent violated Rule 32, Sup. Ct. Rules, Code of Professional Responsibility, in the following particulars:

DR 1-102(A) (a lawyer shall not engage in conduct that is prejudicial to the administration of justice or engage in conduct involving dishonesty, fraud, deceit, or misrepresentation);
DR 5-104(A) (a lawyer shall not enter into a business transaction with a client, unless the client has consented after full disclosure);
DR 6-101(A)(3) (a lawyer shall not neglect a legal matter entrusted to him);
DR 7-101(A)(2) (a lawyer shall not intentionally fail to

carry out a contract with a client for professional services);

DR 7 101(A)(3) (a lawyer shall not intentionally prejudice or damage his client during the course of the professional relationship);

DR 9-102(A) (a lawyer shall deposit funds of clients in identifiable bank accounts);

DR 9-102(B ) (a lawyer shall maintain complete records of all funds and other properties of a client and render appropriate accounts to his client).

This Court looks with grave disfavor upon respondent's disrespect for the high ethical standards to which he is bound. The harm respondent perpetrated not only injured his clients, but adversely reflects on attorneys who strive to discharge their duties honestly. Accordingly, we find that the proper sanction is disbarment. We also order respondent to make an accounting to Mrs. Flynt and Messrs. Peacher, Doucette, and Daniels and to reimburse them in full within sixty (60) days from the date of this order.[2]

Disbarment.

---

[2] At a hearing before this Court, complainant indicated that the outstanding debts are: Mrs. Flynt, $2,000; Mr. Peacher, $750; Mr. Doucette, $5,000; Mr. Daniels, $644.67. Respondent indicated that he had access to sufficient funds to pay these individuals.